IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JAMES L. FENTON

                Plaintiff,                          Civil No. 05-1593-MO

          v.                             OPINION AND ORDER

JO ANNE B. BARNHART,

                Defendant.


**MOSMAN, J.,**

      Plaintiff James Fenton seeks judicial review of the Social Security Commissioner's final

decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the

Social Security Act.  This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).  The

Commissioner's final decision is REMANDED FOR FURTHER PROCEEDINGS.

## BACKGROUND

      Born in 1960, Mr. Fenton was forty-four at the time of his hearing before an


1 - OPINION AND ORDER

Administrative Law Judge ("ALJ").  Tr. at 84.[1]  Mr. Fenton completed high school and worked as

an auto mechanic and auto parts salesman between 1988 and 2001.  Tr. at 98, 103, 124.  Mr.

Fenton was last insured for disability insurance benefit purposes on December 31, 2002.  Tr. at

35.

Mr. Fenton alleges disability since December 1996 due to arthritis, muscle spasms, joint

pain, and a sinus condition.  Tr. at 97.  Mr. Fenton's application was initially denied.  Tr. at 67-

71.  At the hearing, the ALJ found Mr. Fenton not disabled.  The Appeals Council denied review,

making the ALJ's decision final.  Tr. at 7-13.  Mr. Fenton seeks review of this finding.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential  process encompassing between one and five

steps in determining disability under the meaning of the Act.  20 C.F.R. § 404.1520(a), *Bowen v.*

*Yuckert*, 482 U.S. 137, 140 (1987).  Mr. Fenton challenges the ALJ's evaluation of the evidence

and his conclusions at steps two and five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity.

If he is, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ

determines if the claimant has "a severe medically determinable physical or mental impairment"

that meets the twelve month duration requirement.  20 C.F.R. §§ 404.1509; 404.1520(4)(ii).  If

the claimant does not have such a severe impairment, he is not disabled.

At step three, the ALJ determines if the severe impairment meets or equals a "listed"

impairment in the regulations.  20 C.F.R. § 404.1520(4)(iii).  If the impairment is determined to

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative
record filed with the Commissioner's Answer February 22, 2006 (Docket #9).

equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 404.1520(e), Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (1996).

At step four, the ALJ considers the claimant's RFC to determine whether the claimant can perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). If he can perform such work, the claimant is not disabled.

If proceedings reach step five, the Commissioner must determine whether the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. At step five, the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's RFC. *Id.* If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g).

## THE ALJ'S FINDINGS

The ALJ found that Mr. Fenton's testimony and other allegations "are not credible and raise questions of possible malingering." Tr. at 39. The ALJ found Mr. Fenton's musculoskeletal impairments are "severe," Tr. at 34, and made the following RFC assessment:

> Prior to the expiration of his disability insured status on December
> 31. 2002, the claimant had the residual functional capacity to lift of
> [sic] to 20 pounds occasionally and 10 pounds frequently.  He
> could sit, stand, and walk up to six hours a day each.  He used
> "medical" marijuana allegedly to control pain.  The intoxicating
> effects of that substance might have diminished cognitive
> functioning marginally, but it is not deemed to have any significant
> impact on his ability to perform the full range of unskilled work
> (and probably a significant range of skilled work as well), which is
> mentally undemanding by definition.

Tr. at 39.

At step four, the ALJ found Mr. Fenton "unable to perform his past relevant work as of December 31, 2002, but probably could have performed such work before August 2002."  Tr. at 39.  The ALJ subsequently found that "prior to the expiration of his disability insured status," i.e. between August 2002 and December 31, 2002, Mr. Fenton was "possibly unable to perform a full range of light work."  Tr. at  39.  The ALJ solicited testimony from a vocational expert ("VE") who suggested jobs Mr. Fenton could perform in the national economy during that period.  Tr. at 429.  Using the medical-vocational rules as a framework, the ALJ accordingly determined Mr. Fenton was not disabled under the Act at any time through the date of his decision.  Tr. at 38-40.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  This court must weigh "both the evidence that supports and that which detracts from the ALJ's conclusion."  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal

quotation marks omitted).  The reviewing court "may not substitute its judgement for that of the Commissioner."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  Where there is no evidence of malingering, the Commissioner must provided "clear and convincing reasons" for finding a claimant not credible.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The Commissioner must also give "clear and convincing" reasons for rejecting an uncontroverted opinion from a treating physician.  *Magallanes*, 881 F.2d at 751.  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational.  *Batson*, 359 F.3d at 1193.

## DISCUSSION

Mr. Fenton contends the ALJ improperly assessed his credibility, improperly ignored a treating physician's opinion, erred in finding his impairments non-severe, and failed to consider his ability to sustain full time employment.  Mr. Fenton also suggests the ALJ erred in finding he could perform work in the national economy at step five.

### I.    Mr. Fenton's Credibility

Mr. Fenton suggests the ALJ failed to give adequate reasons for questioning his credibility.  The ALJ found that Mr. Fenton's testimony and other allegations "are not credible and raise questions of possible malingering."  Tr. at 39.  The ALJ cited ten reasons for this finding: 1) Mr. Fenton's allegedly conflicting statements regarding when he stopped working; 2) Mr. Fenton's allegedly conflicting statements regarding the nature of his previous auto-repair business; 3) alleged contradictions between Mr. Fenton's reported earnings and the earnings the ALJ believed he might have obtained, as well as an alleged failure to file tax returns;

5 - OPINION AND ORDER

4) Mr. Fenton's failure to show any alternative income prior to his application; 5) Mr. Fenton's

living arrangement with a friend receiving social security benefits; 6) Mr. Fenton's failure to

apply for General Assistance or other public subsidies; 7) Mr. Fenton's "failure to disclose

personal information commonly received from disability applicants," including his reliance on a

post office box and his omission of his estranged wife's maiden name and Social Security

number; 8) Mr. Fenton's alleged failure to seek treatment; 9) Mr. Fenton's conflicting statements

regarding his exposure to hepatitis-C; and 10) Mr. Fenton's use of agency "jargon" in completing

his application for benefits. Tr. at 25-29.  The ALJ also suggested, based on his reading of the

American Psychiatric Association's *Diagnostic and Statistical Manual* (*DSM*), that Mr. Fenton

malingers.  Tr. at 36.

### a.    *Credibility Analysis*

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court

to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v.

Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  In making credibility findings, the ALJ may consider

objective medical evidence and the claimant's treatment history, as well as the claimant's daily

activities, work record, and observations of physicians and third parties with personal knowledge

of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as

weighing inconsistent statements regarding symptoms by the claimant.  *Id*.

### b.    *The ALJ's Findings Regarding Mr. Fenton's Work Activities*

In alleging Mr. Fenton did not accurately report his work activities or his income, the ALJ

stated:

> While this decision declares no formal SGA finding, the issue is addressed in detail herein because of its implications regarding Mr. Fenton's general credibility.  From a common sense perspective, his allegations that he was either not working or only minimally employed raises questions about how he has supported himself these past several years.

Tr. at 26.

This court must affirm an ALJ's inference reasonably drawn from the record.  *Batson*, 359 F.3d at 1193.  The record shows Mr. Fenton had no earnings between 1999 and 2004.  Tr. at 92. The record does not conclusively illustrate the nature of his machine shop and is silent regarding Mr. Fenton's means of meeting basic living expenses.  This silence does not suggest the "common sense" basis for the ALJ's suggestion that Mr. Fenton misrepresented his earnings.  In making a credibility finding the ALJ must make specific findings.  *Smolen*, 80 F.3d at 1284; *Orteza*, 50 F.3d at 750.  The ALJ's further inference that Mr. Fenton did not report earnings is not sustained.  The ALJ's speculations regarding Mr. Fenton's activities do not meet appropriate legal standards.

### c.    *The ALJ's Findings Regarding Mr. Fenton's Living Arrangements*

The ALJ also questioned Mr. Fenton's credibility because he lives with a social security beneficiary and utilizes a post office box.  Tr. at 26 - 27.  While and ALJ may use "ordinary techniques" of credibility evaluation, no authority suggests co-habitation with a person receiving social security benefits or use of a post office box merits negative credibility findings.  *Smolen*, 80 F.3d at 1284.  This reasoning is not sustained.

7 - OPINION AND ORDER

### d.    The ALJ's Malingering Finding

The ALJ found that Mr. Fenton's treating physician "did not necessarily rule out such a finding [of malingering] if evidence came to light that indicated its presence." Tr. at 36. The ALJ subsequently cited at length the *DSM* standard for psychiatric diagnosis of malingering, finding Mr. Fenton possessed three of four characteristics necessary for diagnosis. *Id.*

Mr. Fenton correctly argues the ALJ's lay diagnosis of malingering is inappropriate. This court does not sustain an ALJ's attempts at construing medical diagnoses himself. *See* SSR 96-2p, 1996 WL 374188 (1996). Furthermore, the medical record contains no references suggesting malingering by any of Mr. Fenton's medical providers. The ALJ may not find malingering without support of the medical record. *See Reddick*, 157 F.3d at 722; *see also Ghokassian v. Shalala*, 41 F.3d 1300, 1303 (9th Cir. 1994). For these reasons, the ALJ's attempts to find Mr. Fenton malingers is clear error. Any suggestion by the ALJ initiating other psychiatric diagnoses is erroneous for the same reason.

### e.    Mr. Fenton's Non-Compliance With Treatment

Mr. Fenton suggests the ALJ did not properly consider his refusal to take prescribed anxiety medication. Pl.'s Op. Br. at 13. A claimant's credibility may be questioned if a claimant is non-compliant with treatment, but an ALJ must consider a claimant's reasons for refusing treatment. *Smolen*, 80 F.3d at 1284; 20 C.F.R. § 404.1530; SSR 82-59, 1982 WL 31384 (1982). However, any discrepancy here is harmless because the ALJ did not find Mr. Fenton's anxiety severe. Tr. at 31, 34. Furthermore, Mr. Fenton offers no reasons under SSR 82-59 for failing to take prescribed medication. This court will not reverse for harmless error. *Burch v. Barnhart*,

400 F.3d 676, 679 (9th Cir. 2005).

### f. Mr. Fenton's Use of Agency Jargon

The ALJ found Mr. Fenton's use of phrases such as being "unable to complete tasks in a timely manner," or taking "an 8 hour day to do a 2 hour job," suggested research into agency proceedings in order to manipulate his application. Tr. at 32. This court cannot determine what, if any, research Mr. Fenton undertook. Therefore this reasoning is not sustained. *See Batson*, 359 F.3d at 1193.

## II.    Treating Physician's Statement

Mr. Fenton also suggests the ALJ improperly assessed an opinion submitted by his treating physician, Dr. Mentzer. On April 22, 2003, Dr. Mentzer submitted a "check off" form to Mr. Fenton's attorney, with brief explanations for his opinion. Tr. at 215-25. Dr. Mentzer first indicated Mr. Fenton's report that Dr. Mentzer began treating Mr. Fenton in 1999 was erroneous. Tr. at 215. Dr. Mentzer began treating Mr. Fenton in November 2000. Tr. at 215, 237.

Dr. Mentzer stated that Mr. Fenton's diagnoses included anxiety, "arthritic pain," hepatitis C-1-B, "chronic bilateral knee pain," low back pain, forearm dermatitis, neck pain, and headaches. *Id.* Dr. Mentzer affirmed statements reiterating Mr. Fenton's reported pain and suggesting Mr. Fenton's reports are credible. Tr. at 216-23. Dr. Mentzer did not provide explanations for these affirmations. *Id.*

The ALJ did not universally discredit Dr. Mentzer's opinion. The ALJ cited Dr. Mentzer's chart notes at length, but suggested they did not support Dr. Mentzer's April 2003 submission. Tr. at 29-30. The ALJ stated:

9 - OPINION AND ORDER

> [Dr. Mentzer's] assertions are contradicted elsewhere in the record,
> sometimes by the claimant's own allegations.  Generally, the
> serious levels of physical and mental functional loss implied in
> [Dr. Mentzer's] letter are not matched by specific clinical
> observations recorded on the patient's medical chart.  It also
> appears [Dr. Mentzer's] standards are fairly lax regarding
> authorizing the use of medical marijauna.

Tr. at 31.

Mr. Fenton suggests that Dr. Mentzer's disability opinion is adequately supported because he "had access to x-rays and other laboratory tests in reaching his conclusions."  Pl.'s Op. Br. at 10.  Such access does not establish that these reports support Dr. Mentzer's April 2003 letter.  Dr. Mentzer's chart notes produced between November 2000 and December 31, 2002 (Mr. Fenton's date last insured) do not support the limitations he endorsed in April 2003.  Tr. at 231-37.  These notes show Mr. Fenton's initial hepatitis-C diagnosis, with no reported symptoms, and Mr. Fenton's reports of bilateral knee pain, cervical neck pain and headache.  Tr. at 235-37.  Imaging studies confirmed mild abnormalities in Mr. Fenton's cervical spine and knees.  Tr. at 232.  Dr. Mentzer attributed Mr. Fenton's headaches to his musculoskeletal neck pain.  Tr. at 231.  The ALJ appropriately found Mr. Fenton's musculoskeletal impairments, which here includes his headaches, "severe" during this period.   Tr. at 34.

Dr. Mentzer's notes show no reports of fatigue or associated symptoms for the period in question.  Tr. at 231-37.  Dr. Mentzer made no suggestion of fibromyalgia, fatigue, or a pain disorder until 2004, which is well after Mr. Fenton's date last insured.  Tr. at 360-64.  Such findings are irrelevant in the present matter.  *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

10 - OPINION AND ORDER

An ALJ is not required to accept an opinion by any physician that is "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ's review of Dr. Mentzer's April 2003 opinion is supported by the record and is based upon correct legal standards.

## III. The ALJ's Step Two Finding

Mr. Fenton suggests the ALJ erred in failing to find his anxiety, arthritis pain, hepatitis, and headaches non-severe at step two in the sequential evaluation process. Pl.'s Op. Br. at 12. Mr. Fenton submits that "each of these conditions was diagnosed by [his] treating physicians as present as far back as 5/01." *Id.*

Because the ALJ found Mr. Fenton's musculoskeletal impairments severe, this court will not address Mr. Fenton's step two arguments regarding these impairments. Tr. at 34. In order to establish a step two severity finding, Mr. Fenton must first show that his remaining impairments were present before December 31, 2002. *Tidwell*, 161 F.3d at 601. Mr. Fenton cites Dr. Mentzer's 2003 synopsis of his reported symptoms in attempting to meet this burden. Pl.'s Op. Br. at 12. As discussed above, this letter does not demonstrate that Mr. Fenton's impairments were adequately documented before his date last insured. *See Bayliss*, 427 F.3d at 1216. This court will instead consider the relevant medical records in light of each suggested impairment.

### a. Hepatitis

The ALJ addressed Mr. Fenton's hepatitis at length and found it was asymptomatic in October and November 2000. Tr. at 28, 29, 31. This finding is supported by clinical notes. Tr.

at 231-33, 235.  The ALJ subsequently cited clinical notes showing Mr. Fenton's mild liver

disease in January 2003.  Tr. at 31.  Mr. Fenton began interferon  therapy for his hepatitis at this

time.  Tr. at 253-92.  The ALJ dismissed the side effects of this treatment as "academic" because

treatment occurred after his date last insured.  Tr. at 31.

     A new impairment arising after a date last insured is not relevant to an ALJ's finding.

*Tidwell*, 161 F.3d at 601.  Additional evidence demonstrating severity of a  previously

documented impairment may be relevant.  *Smith v. Apfel*, 849 F.2d 1222, 1225 (9th Cir. 1988).

However, such severity evidence must relate to the impairment as experienced during the period

insured.  *Id.*  Though an ALJ is required to consider side effects of medical therapy, such as

Mr. Fenton's interferon treatment, this therapy does not demonstrate increased symptom severity

during the period in question.  *Id.* at 1225; 20 C.F.R. § 404.1529(c)(3)(iv).  Therefore, the ALJ's

reasoning regarding Mr. Fenton's hepatitis and interferon therapy prior to his date last insured is

sustained.

        **b.**     ***Fibromyalgia***

     Mr. Fenton suggests "fibromyalgia is a condition which does not lend itself to objective

laboratory testing results and the ALJ is not a medical expert entitled to second guess

Dr. Mentzer's interpretation of trigger points as a valid tool for diagnosing."  Pl.'s Op. Br. at 10.

This submission is correct.  *See* SSR 99-2p, 1999 WL 271569 at *8.  However, the issue is moot

because Dr. Mentzer did not suggest Mr. Fenton demonstrated fibromyalgia symptoms until June

2004, well after Mr. Fenton's December 2001 date last insured, Tr. at 364, and the record does

not otherwise suggest Mr. Fenton complained of fibromyalgia symptoms during the relevant

period.  Tr. at 231-37.  The Commissioner is not required to consider subsequent diagnoses and

impairments.  *Tidwell*, 161 F.3d at 601; *see also Mayes v. Massinari*, 276 F.3d 453, 462 (9th Cir.

2001).   Any submission regarding Mr. Fenton's fibromyalgia fails.

### c.    Anxiety

The ALJ noted that Mr. Fenton sought little treatment for his anxiety and did not take

prescribed medication.  Tr. at 31.  The ALJ did not find Mr. Fenton's anxiety severe.  Tr. at 31.

The ALJ must make specific severity findings for a claimant's impairment at steps two and three;

here the ALJ appropriately discussed the medical record.  *See Gonzalez v. Sullivan*, 914 F.2d

1197, 1201 (9th Cir. 1990).

The medical records sporadically refer to Mr. Fenton's anxiety during the relevant period.

Tr. at 233, 236.  The records do not refer to treatment other than alprazolam "as needed for

nerves."  Tr. at 231.  Additionally, Mr. Fenton did not cite anxiety as an impairment in his

disability application forms.  Tr. at 97.  The claimant bears the burden of establishing the severity

of an impairment and Mr. Fenton did not meet this burden.  *Tackett*, 180 F.3d at 1098.  The

ALJ's non-severity of Mr. Fenton's anxiety during the relevant period is appropriately supported

by the record.

### d.    Degenerative Disk Disease

Mr. Fenton suggests September 2003 imaging studies contradict the ALJ's findings

regarding his reported back pain.  Pl.'s Op. Br. at 12.  As stated above, an ALJ is not required to

consider impairments arising after a claimant's insured period.  Established case law directly

teaches that subsequent development of degenerative spinal disc disease need not be considered

in earlier proceedings. *Mayes,* 276 F.3d at 462. Any submission based upon the September 2003 spinal imaging studies fails.

### e. Other Impairments

Mr. Fenton suggests the ALJ was required to make severity findings regarding his remaining impairments, such as his headaches and forearm rash. Mr. Fenton points to no evidence establishing the severity of his forearm rash. Regarding his headaches, medical notes show Mr. Fenton's headaches were the result of cervical muscle strain, which the ALJ appropriately found severe. Tr. at 34, 231.

In making a finding that a claimant does not meet a listing, singularly or in combination, the ALJ must consider the "symptoms, signs, and laboratory findings" regarding the claimant's impairment as reflected in the medical record. *Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir. 1990). He may not conclude "the claimant has failed to provide evidence of medically determinable impairments that meet or equal the Listings" without reference to the medical record. *Id.*

As discussed above, the ALJ appropriately based his severity findings upon the medical record. The ALJ specifically discussed and credited evidence produced by Mr. Fenton's treating physicians Drs. Dodson and Mentzer. Tr. at 28-30. For this reason, this court finds the ALJ's analysis of the evidence sufficient in considering whether Mr. Fenton met the listing standards in combination.

IV.    **The ALJ's Step Five Findings**

    *a.    Sustainability*

    Mr. Fenton submits the ALJ failed to consider his ability to perform sustained work activity in finding he could perform work in the national economy at step five. Pl.'s Op. Br. at 14. As noted above, an ALJ may consider a claimant's daily activities in making a credibility finding. *Smolen*, 80 F.3d at 1284; *Orteza*, 50 F.3d at 750. These activities are not used as examples of sustained work claimant may perform, but may indicate contradictions in a claimant's testimony regarding an alleged disability. *Orteza*, 50 F.3d at 750.

    Mr. Fenton suggests sporadic or erratic completion of daily activities points to a finding of disability. Pl.'s Op. Br. at 14 (citing *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690 (9th Cir. 1999)). The *Gatliff* claimant occupied twenty to thirty jobs within fifteen years and was unable to retain employment due to his personality disorder. 172 F.3d at 691. Mr. Fenton's daily activities and work history are not analogous to that scenario. Mr. Fenton reports steady employment between 1987 and 2001, changing jobs seven or eight times in fourteen years. Tr. at 98, 124. *Gatliff* does not apply to the present case. *See also Lewis v. Apfel*, 236 F.3d 503, 516 (9th Cir. 2001).

    *b.    Questions to the Vocational Expert*

    The VE testified that if all of Mr. Fenton's reported limitations were accepted he would not be able to perform any work in the national economy. Tr. at 430. In making a step five finding that includes non-exertional limitations, the ALJ is required to propound a hypothetical to the VE "that is based on medical assumptions supported by substantial evidence in the record

that reflects all of the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir.

2001).  For the reasons above, this court does not sustain the ALJ's credibility finding, but does

not credit Mr. Fenton's testimony.  Therefore, new vocational evidence must be solicited

incorporating any revised credibility determinations.

## REMAND

After finding the ALJ erred in his decision denying Mr. Fenton's application for benefits,

the court must determine the proper remedy.  This court has discretion to remand for further

proceedings or for immediate payment of benefits.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th

Cir. 2000).  The issue turns on the utility of further proceedings.  A remand for an award of

benefits is appropriate when no useful purpose would be served by further administrative

proceedings or when the record has been fully developed and the evidence is not sufficient to

support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

Thus, improperly rejected evidence should be credited as true and an immediate award of

benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting

such evidence, (2) there are no outstanding issues that must be resolved before a determination of

disability can be made, and (3) it is clear from the record that the ALJ would be required to find

the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178 (citing *Smolen*,

80 F.3d at 1292).  However, where it is not clear the ALJ would be required to award benefits

were the improperly rejected evidence credited, the court has discretion to credit the evidence or

not. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

Here, the ALJ improperly rejected Mr. Fenton's testimony.  However, even if credited,

16 - OPINION AND ORDER

this evidence does not clearly establish disability.  Mr. Fenton stated that he can stand no longer than five to ten minutes on cold days before losing feeling in his hands, Tr. at 417, that he can lift a twenty pound bag of groceries, but may suffer side effects for days afterwards, Tr. at 418, and that on bad days, he has "mild to severe" headaches, which can reach a "seven or eight" on a one-to-ten pain scale.  Tr. at 426.  Further proceedings are necessary for the ALJ to properly evaluate this evidence, reassess Mr. Fenton's RFC accordingly, and obtain additional VE testimony, if necessary.

## **CONCLUSION**

This court finds that the Commissioner's decision that Mr. Fenton did not suffer from disability and is not entitled to benefits under Title  II of the Social Security Act is not based upon correct legal standards.  The case is REMANDED FOR FURTHER PROCEEDINGS consistent with this opinion.

IT IS SO ORDERED.

Dated this  12th  day of October, 2006.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge

17 - OPINION AND ORDER